UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:03CV-236-R

BRYAN C. JOLLEY                                                                                      PLAINTIFF

v.

RONNIE HARVELL, et al.                                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on the Motion to Vacate (Dkt. # 55) of Plaintiff Bryan Jolley ("Jolley") Defendants Officer Ronnie Harvell and Calvert City, Kentucky ("Harvell" and "Calvert City" respectively) responded (Dkt. # 56), Plaintiff replied (Dkt. # 57) and corrected his reply (Dkt. # 58), and this matter is now ripe for adjudication. For the reasons that follow, the Court **DENIES** Plaintiff's motion.

## BACKGROUND

Plaintiff Bryan Jolley was arrested in Calvert City, Kentucky by Officer Ronnie Harvell at 2:34 a.m. on October 6, 2002 for operating a motor vehicle under the influence of alcohol or drugs in violation of Kentucky law. Defendant Officer Harvell saw Jolley's car stop at an intersection for what he said was an unusually long time (approximately 30 seconds), which caused him to follow the vehicle. Due to the darkness, he was unable to see the vehicle's temporary license tag in its rear window. After following the car for about a mile, Officer Harvell decided to stop Jolley because he did not see a license tag. He approached the vehicle and asked Jolley for his driver's license, which Jolley provided, and then asked Jolley to step out of the car after informing him that he smelled the odor of burnt marijuana. Officer Harvell asked

1

Mr. Jolley for permission to search the vehicle, which Jolley initially consented to and then denied. Officer Harvell then asked Jolley to perform some field sobriety tests, including the "one-leg stand" and the "walk-and-turn" test, and Officer Harvell performed the Horizontal Gaze Nystagmus (HGN) test on Jolley. After these tests, Officer Harvell decided to arrest Jolley for DUI based upon his suspicion that Jolley was under the influence of marijuana. Three days after the arrest, the local newspaper in Calvert City, The Lake News, ran a front-page story reporting the details of Jolley's arrest. The results of the drug tests performed on Jolley the morning of his arrest, returned in December 2002 and February 2003, indicated no alcohol or drugs were present in Mr. Jolley's blood or urine. The DUI charge was dismissed on motion of the Commonwealth on March 12, 2003. On March 26, 2003, at Jolley's request, The Lake News ran a follow-up article about the dismissal of the charges and the results of the drug tests. On January 21, 2005, the Court granted Defendants' Motion for Summary Judgment. On January 31, 2005, Plaintiff filed a Motion to Set Aside and a Motion to Vacate that summary judgment.

## DISCUSSION

Mr. Jolley's motion to vacate the Court's January 21, 2005 opinion rests on a number of grounds. Most significantly, Mr. Jolley challenges the Court's determination that Officer Harvell had sufficient probable cause to arrest Mr. Jolley on the night in question, arguing that the Court's dismissal was based on erroneous findings of fact and an error of law. He also claims that the Court overlooked his Fourth Amendment malicious prosecution claim and that it inappropriately dismissed his defamation claim on the basis of an error of fact.

**Probable Cause**

Mr. Jolley argues that the Court incorrectly determined that he failed the "walk-and-turn"

test.  After re-watching the videotape (which the Court did review prior to its summary judgment ruling) and re-examining the standards governing the administration of the test submitted by the parties, the Court concludes that Mr. Jolley did not in fact fail the walk-and-turn test.  The Court notes Defendant's objections that (1) only one of Mr. Jolley's arms is visible at any given time during the tape and (2) Mr. Jolley does appear to hold onto his pants with his left arm, which could be considered "use" of his arms.  However, Officer Harvell does not say so, and does not submit any evidence that he was trained to consider such an arm movement a "clue" in the administration of the test.  On balance, the Court is not persuaded that Mr. Jolley failed the walk-and-stand test.

This decision, however, is not dispositive of the issue of probable cause.  The Court must still examine the totality of the circumstances to determine whether Officer Harvell had probable cause to arrest Mr. Jolley.

It is well-settled law that "[q]ualified immunity is a government official's 'entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).  The first question the Court must answer in determining whether an official charged with violating a suspect's Fourth Amendment right to be free of unreasonable search and seizure is: "[t]aken in the light most favorable to the party asserting the injury, do the facts ... show the officer's conduct violated a constitutional right?"  *Id.* at 201.  An arrest without probable cause constitutes a violation of the Fourth Amendment.  *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997) (citing *Beck v. Ohio*, 379 U.S. 89, 90-91, 85 S.Ct. 223, 225-26, 13 L.Ed.2d 142 (1964)).  "The Supreme Court has held that the test for whether an arrest is

constitutionally valid is 'whether, at the moment the arrest was made, the officers had probable cause to make it--whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995), quoting *Beck v. Ohio*, 379 U.S. at 91, 85 S.Ct. at 225; citing *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir.1993), cert. denied, 511 U.S. 1043, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994).

At the moment the arrest was made, Officer Harvell had probable cause to arrest Mr. Jolley for DUI. Leaving aside the issue of whether Officer Harvell did or did not smell marijuana when he approached Mr. Jolley's car (because there is a factual dispute about that observation), and leaving aside the results of the HGN test (which does not indicate marijuana use), and even discounting Mr. Jolley's one indicator on the walk-and-turn test, Mr. Jolley unequivocally failed the one-leg stand test. Officer Harvell's training indicated that if an individual failed to complete the one-leg stand test, there was a 65% likelihood that he was intoxicated. This fact alone is sufficient to allow a reasonable police officer to determine that it was likely that Mr. Jolley had violated KRS 189A.010.[1] In hindsight, it appears that this belief was mistaken in light of the negative results of Mr. Jolley's blood and urine tests. However, it is not in hindsight that the Court must evaluate Officer Harvell's decision; rather, it is on the basis of the facts and circumstances known to him at the time of the arrest. That Officer Harvell later

---

[1] Plaintiff's expert attacks the validity of the one-leg stand test on the basis of cold weather. However, the weather reports suggest that the weather was 50 degrees that evening. Regardless, Officer Harvell's training manual makes no mention of weather as a factor which could make completing the test difficult (though it does note this factor for the walk-and-turn test).

searched the car and found no marijuana, therefore, is also not relevant to the probable cause determination.

Mr. Jolley also asserts that the Court made an error of law in not addressing the issue of whether, under 189A.010(1)(c), there was evidence that Mr. Jolley had actually operated his motor vehicle while intoxicated. Under Kentucky law, however, that subsection of the statute is designed to address *which* substances, in addition to alcohol, constitute substances under the influence of which a motor vehicle may not be operated; that is, those substances which have the ability to impair one's driving ability. *Kidd v. Commonwealth*, 146 S.W.3d 400 (Ky. Ct. App. 2004). Marijuana is one such substance. *Id.* Even if Officer Harvell did not observe direct evidence of impaired driving ability, he need not have done so in order to believe that Mr. Jolley was under the influence of a substance capable of impairing his driving ability.

**Malicious Prosecution**

Mr. Jolley claims that the Court's Memorandum Opinion inappropriately failed to address his Fourth Amendment claim for malicious prosecution. "Under Kentucky law, one of the elements of a malicious prosecution claim is 'the institution or continuation of original judicial proceedings;' therefore, a claim for warrantless arrest without probable cause cannot be brought as a malicious prosecution claim." *Donovan v. Thames*, 105 F.3d at 298, note 7 (*citing McMaster v. Cabinet for Human Resources*, 824 F.2d 518, 520 (6th Cir.1987) and *Dunn v. Tennessee*, 697 F.2d 121, 125 n. 4 (6th Cir.1982), cert. denied sub nom. *Wyllie v. Dunn*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983)).

**Defamation**

Because Officer Harvell had probable cause to effect a warrantless arrest of Mr. Jolley,

the statements he made in his arrest report were made within the reasonable exercise of a discretionary function in his official capacity as a law enforcement officer. Under common law, Officer Harvell is entitled to absolute immunity from claims of defamation for such statements. *Harwood v. McMurtry*, 22 F.Supp.572 (W.D.Ky. 1938); *see also* 53 C.J.S. *Libel and Slander* § 118. Therefore, Officer Harvell cannot be liable to Mr. Jolley for any damages suffered by Mr. Jolley as a result of the article in The Lake News regarding his arrest.

## CONCLUSION

For these reasons, the Court concludes that the Plaintiff's Motion to Vacate must be **DENIED**. An appropriate order shall issue.